******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE JEWELYETTE M.[*]
# (SC 21227)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

### *Syllabus*

The foster parents of the minor child, J, appealed from, inter alia, the trial court's denial of their motion to open the court's decision to appoint the petitioner, the Commissioner of Children and Families, as J's statutory parent. After the parental rights of J's mother were terminated, and while J's father was incarcerated, J was placed with the foster parents. Subsequently, J's father filed a motion to revoke J's commitment, and the commissioner notified the foster parents of her intention to remove J from their care and to place J in the care of J's paternal aunt. The foster parents were initially granted intervenor status for the purposes of opposing the commissioner's plan and challenging the father's motion to revoke as contrary to J's best interest. Thereafter, the trial court granted the commissioner's motion to remove the foster parents as intervenors. This court then reversed the trial court's order removing the foster parents as intervenors and remanded the case for further proceedings. Shortly after this court remanded the case, the commissioner filed a motion to be appointed as J's statutory parent, which the trial court granted without objection from the parties. The foster parents then sought visitation with J while the commissioner filed a petition for J's adoption by J's paternal aunt and uncle. Prior to a decision by the trial court on the request for visitation and the adoption petition, the foster parents' attorney filed the motion to open the court's appointment of the commissioner as J's statutory parent. The attorney claimed that she had agreed to that appointment under the mistaken belief that there was no other option available. Although the trial court scheduled a hearing on the motion to open, it granted the commissioner's petition for adoption prior to that hearing. The trial court ultimately denied the motion to open as moot, concluding that it could not grant the foster parents any practical relief insofar as it had already granted the petition for J's adoption. On appeal, the foster parents claimed, inter alia, that the trial court should have decided their motion to open prior to granting the adoption petition. *Held*:

The trial court improperly declined to address the merits of the foster parents' timely filed motion to open prior to granting the petition for adoption, and, accordingly, this court reversed the trial court's denial of that motion and remanded the case, directing the trial court on remand to hold a hearing on and to decide the motion to open.

---

[*] In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

It is well established that, in the absence of an extreme, compelling situation, a trial court that has jurisdiction over an action lacks authority to decline to consider a motion that is properly placed before it.

In the present case, the record revealed that the trial court had jurisdiction to address the foster parents' motion to open, as it was timely filed pursuant to statute (§ 52-212a), and the foster parents' attorney succeeded in bringing the existence of that motion to the trial court's attention prior to the commencement of the hearing on the adoption petition.

The trial court's decision to proceed with the adoption before holding the hearing on the foster parents' motion to open was tantamount to a refusal to consider that motion, insofar as the court's decision ensured that the motion to open would not be addressed on the merits due to it being rendered moot by virtue of the adoption.

In light of the significant effect a ruling on the motion to open could have had on the adoption petition, the circumstances required the trial court to schedule a hearing on and to consider the merits of the motion to open prior to the adoption.

Although this court declined to order the trial court to open the adoption decree, it directed the trial court, on remand, to undertake an analysis of J's best interest when addressing the merits of, and determining whether it should grant, the foster parents' motion to open.

Argued April 16—officially released July 15, 2026[**]

*Procedural History*

Petition, in the first case, by the Commissioner of Children and Families to adjudicate the respondents' minor child neglected, brought to the Superior Court in the judicial district of New Britain, Juvenile Matters, and tried to the court, *Abery-Wetstone, J.*; judgment adjudicating the minor child neglected and committing the minor child to the custody of the commissioner; petition, in the second case, by the foster parents of the minor child for a writ of habeas corpus, brought to the Superior Court in the judicial district of New Britain, Juvenile Matters; thereafter, the court, *C. Taylor, J.*, granted the foster parents' motion to intervene in the first case and their motion to consolidate the cases; subsequently, the court, *C. Taylor, J.*, granted the commissioner's motion for an order that the foster parents be removed

[**] July 15, 2026, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

as intervenors in the first case and to bifurcate the cases, and the foster parents appealed; thereafter, the foster parents filed a writ of error relating to, among other orders, an order of the court, *Daniels*, *J.*, granting the commissioner's motion to revoke the commitment of the minor child; subsequently, this court reversed the trial court's order removing the foster parents as intervenors, granted in part the foster parents' writ of error, vacated the trial court's revocation order, and remanded the case for further proceedings; thereafter, the court, *Aaron*, *J.*, appointed the commissioner as the statutory parent of the minor child; subsequently, the court, *Aaron*, *J.*, denied the foster parents' motion to open, and the foster parents appealed. *Reversed*; *further proceedings.*

*Brandon B. Fontaine*, for the intervenors (John N. et al.).

*Evan O'Roark*, deputy solicitor general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (commissioner).

*John R. Weikart*, assigned counsel, for the minor child.

*Opinion*

MULLINS, C. J. This case returns to us for the second time. In the present appeal, the intervening preadoptive foster parents, John N. and Diana N. (foster parents), raise alleged inadequacies in the proceedings that occurred in the trial court after we remanded the matter to that court in *In re Jewelyette M.*, 351 Conn. 511, 332 A.3d 207 (2025). See id., 516, 528–29 n.11, 543–45, 552, 557–58 n.30, 562. Specifically, on remand, the trial court granted the motion of the petitioner, the Commissioner of Children and Families (commissioner), to be appointed as the statutory parent of the minor child, Jewelyette M. (Jewelyette), without objection. Approximately two months later, the foster parents filed a timely motion to open with respect to the appointment of the commissioner as the statutory parent (motion to open) on the grounds that (1) their trial counsel did not understand

the purported legal significance of the statutory parent appointment and had mistakenly failed to object, and (2) the trial court's actions exceeded the scope of the remand order.

After the foster parents filed the motion to open, but prior to holding a hearing on it, the trial court granted the petition for the adoption of Jewelyette. Thereafter, the trial court held a hearing on the foster parents' motion to open and concluded that it had been rendered moot by the intervening adoption. On appeal, the foster parents claim, inter alia, that the trial court should have held a hearing on their timely filed motion to open prior to granting the petition for adoption. We agree and, consequently, remand this case to the trial court for such a hearing.[1]

The full factual and procedural history is set forth in our decision in *In re Jewelyette M.*, supra, 351 Conn. 514–29, which we summarize here by way of background. Jewelyette was born in 2015. Id., 514. At that time, Jewelyette and her mother tested positive for opiates and methadone. Id., 516. Jewelyette was placed in the temporary custody of the commissioner prior to her release from the hospital. Id. Subsequently, Jewelyette was adjudicated neglected and committed to the custody of the commissioner. Id. In 2016, the commissioner filed petitions to terminate the parental rights of the respondents, Jewelyette's mother and father, John M. (John), alleging that they had failed to rehabilitate. Id., 517. In May 2017, the parental rights of Jewelyette's mother were terminated. Id. During this time, and for much of Jewelyette's early life, John was incarcerated. See id., 516; see also id., 517. Shortly after her mother's parental

---

[1] In this appeal, the foster parents also assert that the trial court exceeded the scope of the remand order by appointing the commissioner as the statutory parent. Because of our conclusion that the case must be remanded for a new hearing and decision on the merits of the motion to open, we do not reach this claim.

rights were terminated, Jewelyette was placed with the foster parents. Id., 517.

From that point until 2020, the commissioner had a permanency plan that involved terminating John's parental rights. See id., 514–15, 517. In 2021, John filed a motion to revoke Jewelyette's commitment, and, shortly thereafter, the commissioner notified the foster parents that Jewelyette would be removed from their care within approximately one week and placed with John's sister. See id., 518–19.

"The foster parents responded by filing (1) an application for a writ of habeas corpus under General Statutes § 52-466 (f), which allows foster parents to seek legal custody of their foster children, (2) an application for a temporary injunction barring Jewelyette's removal from their home until the court ruled on the habeas petition, and (3) a motion to intervene. The trial court granted the temporary injunction, as well as the foster parents' motion to intervene for the limited purpose of opposing the [commissioner's] permanency plan and John's motion to revoke as contrary to Jewelyette's best interest. Thereafter, the commissioner filed a motion to vacate the temporary injunction . . . . The trial court later consolidated the foster parents' habeas petition with John's motion to revoke and the commissioner's motion to vacate the temporary injunction." (Footnote omitted.) Id., 519. After a six day trial, the court issued a memorandum of decision in May 2023, denying John's motion to revoke commitment. See id., 515, 520–21. The court summarized its conclusion in these words: "[Jewelyette's] stability and her hope for the future lie in the stable placement that she has [found] with [her] foster family. To remove her from it would be to blight her life in perpetuity." (Internal quotation marks omitted.) Id., 523; see also id., 557 n.30.

One year and six months after the trial court issued its decision allowing the foster parents to intervene, the Appellate Court released its decision in *In re Ryan C.*, 220 Conn. App. 507, 299 A.3d 308, cert. denied, 348 Conn.

901, 300 A.3d 1166 (2023), which concluded that General Statutes § 46b-129 (p) prohibited a trial court from granting permissive intervention in the dispositional phase of a neglect proceeding to a foster parent. See id., 511, 518, 525–26. "On the basis of that decision, the commissioner filed in the trial court a motion to remove the foster parents as intervenors and to bifurcate the foster parents' habeas petition and the neglect proceeding, which the trial court granted on December 11, 2023." *In re Jewelyette M.*, supra, 351 Conn. 523. The foster parents appealed from the trial court's decision, "claiming that the trial court improperly had removed them under the authority of *In re Ryan C.*, a case they contend[ed] misconstrued § 46b-129 (p)."[2] Id., 515. We agreed with the foster parents that "*In re Ryan C.* was incorrectly decided, and must be overruled, because the legislature did not intend § 46b-129 (p) to prohibit a trial court from granting permissive intervention to a foster parent when appropriate." Id. On the basis of our interpretation of *In re Ryan C.*, we concluded that the trial court improperly removed the foster parents as intervenors and that the foster parents' status as intervenors must be restored. Id., 543–44. Accordingly, we reversed the trial court's order removing the foster parents as intervenors and remanded the case to the trial court for further proceedings. See id., 562; see also id., 516, 528–29 n.11, 543–45, 552, 557–58 n.30. Those proceedings on remand are at the heart of the present appeal.

We released our decision in *In re Jewelyette M.* on March 21, 2025. On March 26, 2025, the commissioner filed a motion for in-court review pursuant to Practice Book § 34a-1 and General Statutes § 46b-121 (b), requesting that the trial court "schedule an in-court review . . . for purposes of reclaiming the [commissioner's] motions for appointment of a statutory parent . . . and [to] modify the disposition . . . and setting any further dates for hearings thereon." The court granted the motion and held an in-court review on April 4, 2025. The proceeding

---

[2]While the first appeal was pending before this court, Jewelyette's father passed away. See *In re Jewelyette M.*, supra, 351 Conn. 527.

was conducted virtually. The foster parents and their attorney, Jewelyette's attorney, a social worker from the Department of Children and Families, and the commissioner's attorney were all present. The guardian ad litem was not present but submitted a written statement.

After having all of the parties identify themselves on the record, the trial court explained: "This is before the court on the [commissioner's] motion for an in-court review. That in-court review motion was filed with the court on March 26, 2025, in response to the Supreme Court's decision that was issued [overruling] the [decision of the] Appellate Court [in *In re Ryan C.*] and [reversing] the trial court.

"Let me express to folks how I see this, and, then, I'm interested in counsel and others, if you disagree or if you see it differently. I have the order from the Supreme Court, indicating that the December 11, 2023 . . . order of the trial court removing the foster parents as intervenors is reversed. The [foster parents' writ] of error is granted in part, and the trial court's November 4, 2024 revocation order is vacated. The case is remanded for further proceedings consistent with this opinion.

"So, as I see this, the order, I believe Judge [Carl E.] Taylor removing the foster parents as intervenors, is vacated. The transfer of guardianship, temporary or otherwise, is also vacated. So, Jewelyette, at this point in time, continues to be committed to the [commissioner]. Is there any disagreement about that?" The commissioner's attorney, Jewelyette's attorney, and the foster parents' attorney all indicated no disagreement with the trial court.

The trial court then explained that the motions before it include "the [commissioner's] motion to appoint a statutory parent, date[d] January 22, 2025, [and] filed with the court on January 23, 2025, as well as . . . the motion . . . for in-court review, filed on March 26, 2025,

seeking to have the [commissioner] appointed [as] the statutory parent."

After it described the motions before it, the trial court asked: "Is there any objection to the court granting that motion, given that the parental rights of Jewelyette's mother were previously terminated on May 18, 2017, and [John] is deceased as of January of 2025? So, is there any objection to the court granting the motion to appoint the [commissioner] as the statutory parent?"

The foster parents' attorney immediately responded, "[n]o, Your Honor." Jewelyette's attorney also indicated that she had no objection. The trial court then reviewed the statement filed by the guardian ad litem, who indicated that Jewelyette was currently placed with her aunt and that it was in Jewelyette's "best interest to stay in that placement, with her aunt being a relative foster parent, and the [commissioner] being the statutory parent." The trial court continued: "So, then, if there is no objection, the court will grant the motion and appoint the [commissioner] as the statutory parent of Jewelyette. Is there anything further for today?" The commissioner's attorney responded, "[n]ot from the [commissioner], Your Honor."

The court clerk then said: "Your Honor, I don't believe there is a continuance date for the interested parties' revocation motion." In response, the commissioner's attorney indicated that, to the extent the clerk was referring to the commissioner's motion to open and modify the disposition of commitment, the attorney was withdrawing that motion. The trial court allowed the withdrawal and then stated: "All right. I have just been reminded that, now that Jewelyette is committed, we do need permanency dates." The court ordered the commissioner to file the permanency plan by May 30, 2025, and scheduled the hearing for July 9, 2025. The court then inquired: "Does that work for everyone?" The

foster parents' attorney responded, "[y]es, Your Honor," and the court concluded the hearing.[3]

Thereafter, on April 21, 2025, the foster parents filed a motion asking that the trial court order visitation between them and Jewelyette. The commissioner objected to the motion, claiming that it was beyond the scope of the foster parents' intervention. The trial court scheduled a hearing on that motion for May 14, 2025.

In the meantime, on May 13, 2025, the commissioner filed a petition for adoption, asking the court to appoint the paternal aunt and uncle as Jewelyette's adoptive parents. The commissioner attached an adoption data sheet, an adoption social study, and a written agreement of adoption to the petition. Neither the foster parents nor their counsel was served with notice of the petition and accompanying documents.

On May 14, 2025, the trial court held a hearing on the foster parents' motion for visitation. At that hearing, the court, sua sponte, raised the issue of whether it had the authority to address the foster parents' motion for visitation or whether their status as intervenors for the dispositional phase had ended once the commissioner had been named the statutory parent. After giving the parties an opportunity to be heard on the jurisdictional issue, the court ordered a briefing schedule and, at the request of the foster parents' attorney, agreed to schedule a hearing for a later date to address the jurisdictional issue.

During the May 14, 2025 hearing, the trial court also informed the foster parents and their attorney that the commissioner was "pursuing permanency in the nature of an adoption . . . ." The foster parents' attorney informed

[3]In light of the fact that the trial court operated with the understanding that the appointment of the commissioner as statutory parent ended the foster parents' intervention, we recognize that the trial court's inquiry about the availability of the foster parents and their counsel for further hearings was confusing and even misleading.

the court that, prior to the hearing, they were unaware of the petition for adoption.

On June 2, 2025, approximately twenty minutes prior to the start of the second hearing on the foster parents' motion for visitation, the foster parents filed their motion to open. As grounds for the motion, the foster parents asserted that the appointment of the commissioner as the statutory parent did not supersede this court's remand order, but, to the extent that the trial court found that it did, they requested that the trial court remove the commissioner as the statutory parent. The foster parents' attorney further asserted that she had agreed to the appointment of the commissioner as the statutory parent because she was under the mistaken belief that there was no other option available.

Although the foster parents' attorney notified the trial court and the other parties that she had filed the motion to open approximately twenty minutes before the start of the hearing on visitation, the court explained: "So, for today's purposes, the only thing before the court today, and, as I indicated at the status conference, I think everyone was on notice that there is an adoption pending and [that it] was not going to be continued." The court proceeded: "So, why don't we address the standing issue for purposes of the current status of the case. I think I referred . . . everyone to a few of the other decisions addressing this issue."

After hearing argument from the parties, the trial court made the following ruling: "[T]he court is going to find that the appointment of the [commissioner], by agreement of all parties, on April [4, 2025], as [the] statutory parent of Jewelyette by operation of law terminated the neglect proceedings and the purpose for which the . . . foster parents had moved to intervene, in accordance with the Supreme Court's decision, which was for the limited purpose of opposing the permanency plan and the revocation of commitment. It was as to the

dispositional best interest of [Jewelyette], in the context of that neglect proceeding.

"The court is mindful of the Supreme Court's decision and has read the majority opinion a number of times, including the relevant footnotes, and . . . throughout, the court was clear that the purpose of the foster parents being granted intervenor status was pursuant to Practice Book §35a-4, which was permissive intervention, that they should not have been removed, that it was error to remove them as intervenors in the underlining neglect proceeding, with regard to the disposition of that proceeding.

"At this time, given the current status of the case, there is no neglect proceeding pending. There is no basis, and the . . . foster parents do not have standing to file a motion for visitation now that the [commissioner] has been named as the statutory parent. So, the objection to the motion is sustained."

It is important to note that, during the hearing on the motion for visitation, the foster parents' attorney repeatedly referred to the motion to open. Ultimately, the foster parents' attorney explained: "My motion to [open] notes my mistake in believing that the only next option was for [the commissioner] to become the statutory parent. Upon my research, I've learned that there could also be motions for guardianship that could've been filed at that point, once [Jewelyette] was recommitted to the [commissioner], [but] before [the commissioner] was [appointed] as the statutory parent.

"So, again, that was my mistake and my misunderstanding of the law. I want to make sure I do everything on behalf of my clients to try to rectify it, which is why I filed the motion [to open] today, once I did more research, knowing that today—so [that] everyone knows, I wasn't trying to trick anybody by filing it twenty minutes before the hearing. We were told on Wednesday that

this hearing would be on Monday, and we all made our schedules work for that to happen.

"So, I wasn't trying to pull the wool over anybody's eyes in doing this at the final hour. I just literally was pulling everything together in trying to make this all work. I know there's an adoption on Thursday that the court really wants to move forward [with]." Even after the trial court issued its ruling dismissing the foster parents' motion for visitation, the foster parents' attorney persisted and asked the court to schedule a hearing on the motion to open.

Thereafter, the trial court scheduled the hearing on the motion to open for June 18, 2025. Before that hearing, on June 5, 2025, the court granted the petition for adoption.

At the outset of the hearing on June 18, 2025, the trial court announced: "Before we go any further, I know everyone is aware that Jewelyette was adopted on June 5, 2025. Tell me why this matter is not moot at this point in time." After allowing the foster parents' attorney brief argument on the motion to open, the trial court explained, "I do think that, at this time, [the motion to open is] moot. There is no practical relief that the court can grant at this point." Although the trial court allowed the foster parents' attorney to argue further, consistent with its initial ruling, the court denied the motion to open, concluding that it was moot because the court could not offer the foster parents any practical relief in light of Jewelyette's adoption.[4] This appeal followed.

On appeal to this court, the foster parents claim, inter alia, that the trial court failed to properly address the

---

[4]We note that the form of the trial court's decision on the motion is improper. Because the trial court concluded that the motion to open was moot, the court should have dismissed, rather than denied, the motion. See, e.g., *Argent Mortgage Co., LLC* v. *Huertas*, 288 Conn. 568, 581–82, 953 A.2d 868 (2008). Nevertheless, because we remand the case back to the trial court for a hearing on the motion to open, we need not alter the form of the court's decision.

merits of their motion to open. Specifically, the foster parents assert that their motion to open was timely filed pursuant to General Statutes § 52-212a[5] because it was filed within four months of the appointment of the commissioner as the statutory parent. The foster parents further assert that the trial court should have heard argument on and decided their timely filed motion to open prior to proceeding with the adoption, particularly when the trial court determined that the subsequent adoption rendered the motion to open moot. We agree with the foster parents.

It is well established that "the general rule [is] that a trial court must consider and decide on a reasonably prompt basis all motions properly placed before it . . . ." *Ahneman* v. *Ahneman*, 243 Conn. 471, 484, 706 A.2d 960 (1998). Indeed, "in the absence of an extreme, compelling situation, a trial court that has jurisdiction over an action lacks authority to refuse to consider a litigant's motions." (Internal quotation marks omitted.) *Ramin* v. *Ramin*, 281 Conn. 324, 336, 915 A.2d 790 (2007). "Courts are in the business of ruling on litigants' contentions, and . . . operate under the rule essential to the efficient administration of justice, that [when] a court is vested with jurisdiction over the [subject matter] . . . and . . . obtains jurisdiction of the person, it becomes its . . . duty to determine every question which may arise in the cause . . . ." (Internal quotation marks omitted.) *Ahneman* v. *Ahneman*, supra, 484. "A trial court does

[5]General Statutes § 52-212a provides: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which the notice of judgment or decree was sent. The continuing jurisdiction conferred on the court in preadoptive proceedings pursuant to subsection (o) of section 17a-112 does not confer continuing jurisdiction on the court for purposes of reopening a judgment terminating parental rights. The parties may waive the provisions of this section or otherwise submit to the jurisdiction of the court, provided the filing of an amended petition for termination of parental rights does not constitute a waiver of the provisions of this section or a submission to the jurisdiction of the court to reopen a judgment terminating parental rights."

not have discretion, based on notions of judicial efficiency, to decline to exercise its jurisdiction by refusing to consider certain motions." (Internal quotation marks omitted.) *Hamilton* v. *Hamilton*, 354 Conn. 639, 651–52, 355 A.3d 1090 (2026).

In the present case, the foster parents filed their motion to open on June 2, 2025, approximately two months after the trial court granted the commissioner's motion to appoint her as Jewelyette's statutory parent on April 4, 2025. Therefore, the foster parents' motion to open was timely filed pursuant to § 52-212a, and, thus, the court had jurisdiction to address it.

A review of the record and the transcripts of the proceedings in this case indicates that, prior to the adoption, the foster parents, through their attorney, repeatedly asked the trial court to hear argument on their motion to open. Indeed, at the June 2, 2025 hearing on the foster parents' motion for visitation, their attorney repeatedly asked the trial court to review the motion to open and to consider the arguments raised therein. Although we recognize that the motion to open was filed only approximately twenty minutes before that hearing commenced and that the trial court and the parties did not plan to address it at the hearing, the record reveals that the foster parents' attorney had met her obligation to bring the existence of the motion to the trial court's attention prior to the adoption. Despite counsel's repeated efforts, the trial court did not hold a hearing on the motion to open until June 18, 2025, thirteen days after the petition for adoption had been granted.

Ordinarily, we would not consider the scheduling of a hearing on a motion sixteen days after it was filed a reversible refusal to rule on a pending motion. The circumstances here are not ordinary though. The trial court made clear to the parties on June 2, 2025, that it was not going to delay the adoption proceeding that was scheduled for June 5, 2025, so that it could first rule on the motion to open. Then, when the court held the hearing on the motion to open on June 18, 2015, it immediately

concluded that the motion was moot due to the adoption it permitted to go forward despite the pending motion to open. The court thus managed the pending motions in a way that ensured that the motion to open would not be addressed on the merits. The court's handling of the motion to open was tantamount to a refusal to consider it.

We understand that the trial court was concerned about postponing the adoption proceeding that was already scheduled to occur three days after the motion to open was filed. We also are mindful that "the trial court has broad discretion in managing its docket, but [the court] still is required to consider and decide all motions properly placed before it. See *Kammili* v. *Kammili*, 197 Conn. App. 656, 661, 232 A.3d 102, cert. denied, 335 Conn. 947, 238 A.3d 18 (2020)." *Hallock* v. *Hallock*, 228 Conn. App. 81, 91 n.6, 324 A.3d 193 (2024). Nevertheless, given the significant effect a ruling on the motion to open could have had on the petition for adoption, these circumstances required the trial court in this matter to schedule a hearing on the motion to open *prior* to the adoption or to briefly postpone the adoption proceeding to allow the court time to adjudicate the merits of the motion. Instead, by declining to hold a timely hearing on the merits of the motion to open prior to the adoption and causing the motion, in the trial court's view, to become moot, "the trial court abdicated its fundamental obligation to decide all matters properly presented to it." *Ramin* v. *Ramin*, supra, 281 Conn. 338; see also id. ("In refusing to decide the motion before it by marking it 'off,' the trial court abdicated its fundamental obligation to decide all matters properly presented to it. . . . [T]he court had the case and the . . . motion [at issue] properly before it. . . . [I]t was the court's duty to determine the questions raised by the motion.").[6]

Because the trial court declined to hear argument on the merits of the timely filed motion to open prior to the

[6] A related statute, General Statutes § 45a-719, further indicates that it was critical for the trial court to hear argument on the motion to open prior to the adoption proceeding. Section 45a-719 provides in relevant part: "The court may grant a motion to open or set aside a judgment

adoption, the foster parents did not get the meaning-ful hearing or ruling on the merits to which they were entitled.[7] Notwithstanding the fact that Jewelyette has been adopted, under the circumstances of this case, we conclude that the foster parents are entitled to a hear-ing on the merits of their timely filed motion to open. Accordingly, we remand the case to the trial court for a new hearing and decision addressing the merits of the timely filed motion to open.

At this juncture, we do not order the trial court to open the adoption decree because any decision in that regard would be premature. Cf. *In re P. T.-W.*, 223 Conn. App. 571, 573, 579, 583–84, 589–90, 309 A.3d 394 (2024) (remanding case to trial court for new hearing on motion to open judgment terminating respondent father's parental rights without ordering court to open adoption decree when motion was filed before child was adopted). Nevertheless, as this court has explained,

terminating parental rights pursuant to section 52-212 or 52-212a or pursuant to common law or may grant a petition for a new trial on the issue of the termination of parental rights, provided the court shall consider the best interest of the child, *except that no such motion or petition may be granted if a final decree of adoption has been issued prior to the filing of any such motion or petition. . . .*" (Emphasis added.)

Although this statute is not directly applicable to the present case, it is instructive on two points. First, § 45a-719 provides that the trial court may grant a motion to open a judgment terminating parental rights only if it is filed *prior to the issuance of a final decree of adoption.* This indicates that the legislature recognized that a trial court should consider a motion to open that is *filed* prior to an adoption. Second, § 45a-719 provides that, in considering whether to grant a motion to open a judgment terminating parental rights, the trial court must consider the best interest of the child. Applying these principles to the present case, we conclude that the trial court should have considered the motion to open filed by the foster parents because it was filed prior to the issuance of the final decree of adoption, and, in considering whether to grant such motion, the court should have considered the best interest of Jewelyette.

[7]After repeatedly concluding that the motion to open was moot because Jewelyette had been adopted, the trial court continued: "Even on the merit[s], the court would deny the motion. There is no basis to [open]." Nevertheless, on the basis of this record, we do not conclude that the merits of the motion to open were actually litigated by the parties and adjudicated by the court.

§ 52-212a is "a remedial statute that is grounded in a continuing commitment to [common-law] principles of fairness and justice . . . ." *In re Baby Girl B.*, 224 Conn. 263, 285, 618 A.2d 1 (1992); see also id., 284–85 and n.16 (noting that discretion to open judgment conferred on trial court by § 52-212a is not necessarily limited by requirement in General Statutes § 52-212 (a) that moving party show that good defense was not raised when adverse judgment was rendered by reason of " 'mistake, accident or other reasonable cause' "). Therefore, in light of the unique and prolonged history of the present case, and to avoid further delay in the resolution of this proceeding, we direct the trial court on remand to undertake an analysis of the best interest of Jewelyette when considering the motion to open. In fact, what is in Jewelyette's best interest is likely the most significant factor in determining, in this particular case, whether the motion to open should be granted.[8] This best interest analysis would necessarily involve hearing from the foster parents and the commissioner on Jewelyette's current status. This approach makes particular sense in this case given that the attorneys for Jewelyette and the foster parents have apprised us that she is no longer residing with her adoptive parents and that she now lives with her maternal aunt and cousins in a different town, where she is enrolled in a public school. These new circumstances may be relevant to the best interest analysis and could impact the trial court's resolution of the motion to open. Paramount to the process is identification of the best path for Jewelyette moving forward.

In light of our conclusions that the foster parents are entitled to a hearing and decision on the merits of the motion to open and that the best interest determination must be conducted as part of the hearing on the motion to open, we need not address the foster parents' claims that the trial court exceeded the scope of this court's remand order in *In re Jewelyette M.*, supra, 351 Conn.

[8] Considering the best interest of the child when deciding whether to grant a motion to open is also consistent with the legislative mandate of General Statutes § 45a-719. See footnote 6 of this opinion.

516, 528–29 n.11, 543–45, 552, 557–58 n.30, 562, and that the appointment of the commissioner as the statutory parent should be reversed at this juncture because of a mistake by the foster parents' attorney.[9] Both of those issues are raised in the motion to open, and the merits of that motion will be litigated at a new hearing on remand. Our decision, therefore, in no way reflects an opinion by this court concerning the merits of the motion to open.[10]

The trial court's decision denying the foster parents' motion to open is reversed and the case is remanded for a hearing on the merits of the motion, including consideration of Jewelyette's best interest, and for further proceedings consistent with this opinion.

In this opinion the other justices concurred.

---

[9] In their brief to this court, the foster parents assert that "appointing [the commissioner] as statutory parent was a formality at the start of the proceeding[s] [on remand] and that the trial court was still able to fulfill the appellate mandate with a hearing on [Jewelyette's] best interest, which it should have done." Because we remand the case to the trial court for a hearing on the motion to open and order that the trial court conduct a best interest analysis at that hearing, we need not address whether the trial court could have held a hearing on the best interest of Jewelyette after appointing the commissioner as statutory parent.

[10] See footnote 1 of this opinion.